# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

| | |
|---|---|
| In re:  BARNEY ALLEN SQUIERS, ) | |
| ) | Case No. 11-31098-DOT |
| Debtor. ) | Chapter 7 |
| ) | |
| DARHL ANDRUS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Adv. Proc. No._____ |
| ) | |
| BARNEY ALLEN SQUIERS, ) | |
| ) | |
| Debtor/Defendant. ) | |
| ) | |

## COMPLAINT TO DETERMINE DISCHARGEABILITY

**COMES NOW** Darhl Andrus ("Andrus") by counsel, pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(6) and *Federal Rule of Bankruptcy Procedure* 7001, and in support of his complaint to determine the dischargeabilty of the debt owed by the Debtor, Barney Allen Squiers ("Squiers"), states as follows:

---

William A. Gray, Esquire – VSB #46911
Douglas P. Rucker, Jr., Esquire – VSB #12776
Sands Anderson PC
1111 East Main Street, Suite 2400
Post Office Box 1998
Richmond, Virginia 23218-1998
 (804) 648-1636 Telephone
 (804) 783-7291 Facsimile
bgray@sandsanderson.com
drucker@sandsanderson.com

And

Frederick J. Getty, Esq. (VSB# 37338)
GETTY & ASSOCIATES, P.C.
Post Office Box 1040
4258 Germanna Highway, Suite E
Locust Grove, Virginia 22508
TEL:  540-972-7600
FAX:  540-972-0880
info@gettyandassociates.com
*Counsel for Daryl Andrus*

### Parties and Jurisdiction

1.  Squiers is an individual residing in Virginia, and the Debtor in this Chapter 7 bankruptcy case.

2.  Andrus is a Virginia resident and creditor of Squiers.

3.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334.

4.  This is a core proceeding within the meaning of 28 U.S.C. §157.

5.  Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409.

### Facts

6.  On February 22, 2011, Squiers filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

7.  Squiers was a corporate officer and an owner of Performance Auto Crafters, Inc., operating from 32481 Constitution Highway, Locust Grove, Virginia in Orange County, Virginia, under the name Performance Auto Crafters.

8.  During its operation, Squiers advertised and represented Performance Auto Crafters to potential clients as experts in the restoration of old automobiles.

9.  In 2009, Andrus met with Squiers to discuss the restoration of Andrus' 1957 Chevrolet Bel Air convertible. During this discussion, Squiers represented to Andrus that he could restore the vehicle for a total of $65,000.00, and that the restoration work would be done in a manner consistent with the standards in the profession.

10. Squiers knew or should have known that the restoration of the vehicle would cost more than the quoted price, but Squiers still quoted Andrus this unreasonably low amount with the intent of inducing Andrus into entering into an oral contract.

11. Following the making of the false representations described above, Andrus relied upon them to his detriment by accepting the offer made by Squiers to restore the vehicle for

2

$65,000.00, and directing that the proposed work be done on the vehicle. Pursuant to this agreement, Andrus also provided Squiers with a number of items and parts that he had acquired and were to be used in the restoration of the vehicle.

12. After Squiers began work on the vehicle, Andrus and Squiers met multiple times and Squiers provided periodic invoices to Andrus for the parts and labor allegedly expended in the restoration work. However, in these invoices, Squiers would bill Andrus multiple times for the same item, bill Andrus for items that were never actually provided, bill Andrus for items that Andrus procured himself and delivered to Squiers to use, bill Andrus the full price for work that was left done incomplete, charge Andrus a price for parts that were provided that was well in excess of the actual value of these parts or cost to Squiers, and deliberately overcharge Andrus for work claimed to be done but was not actually performed. Squiers intentionally caused these invoices to be sent to Andrus when he knew or should have known that these invoices contained charges that were false at the times that the invoices were created.

13. Squiers made the false misrepresentations referenced above to benefit him and with a great disregard to Andrus' legal rights.

14. Without realizing the fraudulent assertions and material misrepresentations and omissions made by Squiers orally in these invoices, Andrus paid these invoices. In total, Andrus paid Squiers and Performance Auto Crafters the sum of $75,669.09 for restoration work for the vehicle.

15. Despite paying $75,669.09 for the restoration work, the work done on the vehicle were not completed, there was work that the parties agreed was to be done that was never undertaken, and the work that was performed does not meet with the standards in the profession and will require the expenditure of additional considerable sums to repair the damage done by

3

Document      Page 4 of 6

Squiers and Performance Auto Crafters and restore the vehicle to the condition that was contemplated between the parties.

16. Squiers has represented to Andrus that an additional $25,000.00 is needed to complete the restoration work on the vehicle, which if paid would bring the total paid for the restoration work to greater than $100,000.00, an increase of approximately 55% of the contract price Squiers quoted Andrus.

17. Based upon the foregoing, Andrus retook possession of the vehicle in 2010 and took the vehicle elsewhere to have the work completed.

18. After Andrus retook possession of the vehicle, Squiers sent new invoices to Andrus purporting to detail all of the money paid by Andrus and all of the charges incurred for parts and labor. Under these invoices, Squiers claimed a total of $67,078.78 was due.

19. However, included in these new invoices, in part, were charges for $7,250.00 for parts that were either overcharged or improperly charged to Andrus and $20,175.00 for parts and items never received by Andrus. The remaining charges for work done on the vehicle were $39,653.78.

20. At a minimum, since Andrus already paid Squiers a total of $75,669.09, the difference between the invoice amount for work that was performed referenced in Paragraph 18 and the sum actually paid, i.e. $36,015.31, should be returned to Andrus as an unearned deposit. However, Andrus disputes that the entire amount of $39,653.78 was earned by Squiers and believes that substantially more money should be returned by Squiers.

21. The material misrepresentations and omissions were an attempt made by Squiers to Andrus to acquire money that was not earned or justified in violation of Virginia Code Section 18.2-178 (1950).

22. Andrus relied, to his detriment, on the false misrepresentations and omissions made by Squiers to induce Andrus into entering into a contract and have been damaged in the amount of $75,669.09 for work that was incomplete and substandard, and, even further, Squiers is seeking an additional $25,000.00 to complete this incomplete and substandard work.

23. Squiers made false and fraudulent statements and omissions and provided fraudulent invoices to Andrus to induce Andrus into paying for charges for which Andrus was not liable. Andrus paid $75,669.09 pursuant to these fraudulent invoices as he initially believed these invoices were accurate and this was a material factor in the continuing relationship between Squiers and Andrus. Squiers made these false and fraudulent statements willfully and maliciously to induce Andrus into paying money that was not owed and then undertook steps to attempt to conceal his fraudulent course of conduct.

24. Squiers now asserts that $67,078.78 is due from Andrus, which Andrus believes said sum is grossly in excess of any amount due to Squiers, but refuses to even issue Andrus a refund between the amount claimed to be owed and the amount that was actually paid.

25. Andrus relied, to his detriment, on the false and fraudulent information and the omissions of Squiers and also contained in the provided invoices, resulting in the loss of personal funds to Squiers and Squiers' enterprises.

26. As a result of being misled by Squiers, Andrus has sustained damages and pecuniary losses of at least $100,000.00 to undo the work done by Squiers and then restore the vehicle to the condition that the parties agreed, plus interest at 6% per annum the date of any judgment, until paid, together with reasonable attorneys' fees and costs incurred.

27. Pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(6), Squiers' debts to Andrus are non-dischargeable.

**WHEREFORE**, Daryl Andrus, by counsel, respectfully requests that this Court (a) determine that the debt owed by the Debtor to Andrus is non-dischargeable; (b) determine the extent of the debt owed to Andrus that is non-dischargeable and enter judgment against the Debtor for such amount; and (c) grant such other and further relief as the Court deems just and proper.

Dated:   May 26, 2011                                  **Respectfully Submitted,**

**DARYL ANDRUS**

**By Counsel**

 /s/ William A. Gray
William A. Gray, Esquire – VSB #46911
Douglas P. Rucker, Jr., Esquire – VSB #12776
Sands Anderson PC
1111 East Main Street, Suite 2400
Post Office Box 1998
Richmond, Virginia 23218-1998
 (804) 648-1636 Telephone
 (804) 783-7291 Facsimile
bgray@sandsanderson.com
drucker@sandsanderson.com

And

Frederick J. Getty, Esq. (VSB# 37338)
GETTY & ASSOCIATES, P.C.
Post Office Box 1040
4258 Germanna Highway, Suite E
Locust Grove, Virginia 22508
TEL:  540-972-7600
FAX:  540-972-0880
*Counsel for Daryl Andrus*